MATTER OF A—

In Section 212(d)(3) Proceedings

A-11149063

*Decided by District Director January 26, 1965*

In view of applicant's complete rehabilitation since 1951 as a former criminal, alcoholic, and drug addict, her temporary admission to the United States, notwithstanding her inadmissibility under sections 212(a)(4), (9), (12) and (23), Immigration and Nationality Act, as amended, is authorized pursuant to section 212(d)(3) of the Act to attend a meeting, and to visit the General Services Headquarters, of Alcoholics Anonymous, to exchange ideas and information with others who are also actively engaged in the treatment of drug addicts and alcoholics.

Applicant is a married female, native, citizen and resident of Canada, born August 3, 1926, who was excluded and deported from United States at Detroit, Michigan on September 25, 1951 because of her criminal record and a Class A medical certificate stating that she was found to be afflicted with constitutional psychopathic inferiority on the basis of her past history of "— repeated criminal activity and other anti-social behavior including prostitution and drug addiction." She has been convicted of the crimes of obtaining goods and money by false pretenses, uttering, and being an inmate of a bawdy house. These convictions took place in Canada and are documented in her file. She admits the commission of the crime of uttering in connection with obtaining narcotic drugs, and to having engaged in prostitution. Her appeal from the Class A medical certificate was dismissed and the medical finding confirmed on October 1, 1951. On July 18, 1952 this Service denied her application for exercise of the Ninth Proviso to section 3 of the Immigration Act of 1917. At that time applicant sought to enter temporarily to visit her husband, who was then an inmate of a prison in United States. The record indicates applicant now seeks to enter United States as a nonimmigrant for the period from January 30, 1965 to February 2, 1965 to attend an Alcoholics Anonymous meeting at

Buffalo, New York and to visit General Services Headquarters of Alcoholics Anonymous in New York City. The application also states that she would like permanent visiting privileges.

Supporting statements presented with the application claim that applicant has completely rehabilitated. In a letter of June 4, 1964 the Rev. James A. Drewelow states that he has known applicant for thirteen years; that when he first met her she was a dope addict; that she mentioned to him her desire to change her life, did so, and is now doing "a great work for humanity in helping unfortunate girls rebuild their lives—never once has she gone back to her old habits—she is an inspiring speaker—and her life has been exemplary to all who know her." The office manager of Alcoholics Anonymous in Montreal in a letter of June 12, 1964 states applicant has been a member of that organization for the past ten and one-half years; is considered one of the more stable members; "—by her example has helped many a sick woman alcoholic along the road to recovery;" and that "—I take no hesitation in recommending this person as an honest and trustworthy individual." In another letter of June 12, 1964 a priest in Montreal states that he has known applicant since 1954; vouches for her honesty and high integrity; states that she is an active, outstanding member of Alcoholics Anonymous in Montreal; that she was active in organizing Narcotics Anonymous in Montreal and assisting with organizations in other parts of Canada; and that he recommends her without reservation. In a letter of June 10, 1964 another priest states that he has known applicant for two years; that her life is "surely edifying"; and that she is capable of living the life of a religious. In a letter of June 20, 1964 Dr. John A. Larson, Ph.D., M.D., who identifies himself as highly qualified by training and experience in the psychiatric and medical field, particularly in the treatment of alcoholics and drug addiction, states that he has been in constant contact with applicant by mail since 1959 when he wrote to her asking her cooperation in starting work with drug addicts comparable to that of Alcoholics Anonymous with alcoholics; that he has the greatest respect and admiration for her; that were he now in charge of a hospital or outpatient unit he would seek her as a staff member to assist in treatment of alcoholics and drug addicts; that throughout their discussions by letter applicant has "not only shown professional astuteness, dependability, but has exhibited a marked integrity and sympathetic and yet objective understanding of the patient—we have kept contact, but not as patient and physician, but as colleague and friend. —in addition to maintaining her sobriety and abstinence from all types of drugs, she has enrolled

to take courses—I would like to ask her assistance in the final clearance of the clerical preparation of my present manuscript which I have been preparing for the past forty years—."

Two of the priests who wrote letters in support of this application and the office manager of Alcoholics Anonymous in Montreal were interviewed by an officer of this Service. They completely affirmed their letters in behalf of applicant; stated that they were aware of her past history of addiction and prostitution; that they believe she is completely rehabilitated; and that she is not now a person afflicted with constitutional psychopathic inferiority. In addition, it was stated that applicant has been continuously attending classes on the high school and college level; has led an exemplary life helping others; that she is completely free of any addiction to drugs or alcohol; has studied hard over the years to improve herself; and that she has developed an intense interest and participation in religious life over the past eight years.

The circumstances of this application have been closely scrutinized. Inquiry, including national agency checks, has revealed no record of criminal activity, prostitution or narcotic addiction since 1951. Applicant is now a valuable member of society, actively engaged in rehabilitation work among alcoholics and drug addicts. In view of the overwhelming statistics as to recidivism among former drug addicts, her complete freedom from addiction since 1951 is an astounding accomplishment. The evidence given by those who are now closely associated with her, who know her history, and who are themselves persons of unquestioned veracity cannot be denied. Applicant is apparently one of the rare cases of rehabilitation found among former drug addicts, as well as a former alcoholic. Her background has enabled her to make a unique and valuable contribution to the treatment of alcoholism and drug addiction. Communication among those working in these fields is of prime importance. The woman who heads the Women's Division of Alcoholics Anonymous is to lecture in Buffalo on January 29, 1965. Applicant has mistakenly mentioned the date of this meeting as January 30, 1965. It is concluded that applicant's entry would serve a humanitarian purpose. She is a bona fide nonimmigrant. There is no reason to suspect that her brief presence in the United States would adversely affect the welfare, safety or security of this country.

*It is ordered* that the application be granted, subject to revocation at any time, to permit one entry into the United States despite inadmissibility under sections 212(a)(4), (9), (12) and (23) of the Immigration and Nationality Act, at the port of Buffalo, New York

on or before January 29, 1965 for a period through February 2, 1965, for the purpose of attending a meeting of Alcoholics Anonymous in Buffalo, New York and to visit the General Services Headquarters of Alcoholics Anonymous in New York City, to exchange ideas and information with other persons actively engaged in the treatment of drug addiction and alcoholism.